4 F.3d 918
 144 L.R.R.M. (BNA) 2220, 126 Lab.Cas. P 10,859,
26 Fed.R.Serv.3d 1061
 BRIDGESTONE/FIRESTONE, INC., doing business as Firestone
Tire and Rubber Company, Plaintiff-Appellee/Cross-Appellant,
v.
LOCAL UNION NO. 998, United Rubber, Cork, Linoleum, and
Plastic Workers of America AFL-CIO; United Rubber, Cork,
Linoleum, and Plastic Workers of America AFL-CIO, CLC
International Union, Defendants-Appellants/Cross-Appellees.
 Nos. 90-6319 and 90-6330.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 10, 1993.
 
 Kayla Bower of Lampkin, McCaffrey & Tawwater, Oklahoma City, OK, for defendants-appellants/cross-appellees.
 Keith L. Pryatel of Millisor & Nobil, Cleveland, OH (Harley M. Kastner of Millisor & Nobil, with him on the brief), for plaintiff-appellee/cross-appellant.
 Before BALDOCK, SETH, and HOLLOWAY, Circuit Judges.
 HOLLOWAY, Circuit Judge.
 
 
 1
 The plaintiff-appellee Bridgestone/Firestone, Inc. (Firestone) filed this action seeking, inter alia, a declaratory judgment that a dispute involving an employee incentive program, the Employee Suggestion System, was nonarbitrable.[1] The district court granted summary judgment for Firestone and the Union defendant appeals (No. 90-6319). We affirm that judgment. Also before us is an appeal by Firestone challenging the district court's refusal, in a separate order, to award sanctions against the Union under Rule 11 of the Federal Rules of Civil Procedure (No. 90-6330). We deny a Union motion to dismiss that appeal, but affirm the denial of sanctions.
 
 
 2
 * Factual and Procedural History
 
 
 3
 Firestone originated its Employee Suggestion System ("the Suggestion System") in the 1920s in order to provide incentives for employees to come up with ways to improve safety and efficiency at Firestone's plants. Under the Suggestion System, Firestone could pay an employee who made a suggestion a percentage, up to $25,000, of the amounts saved or the amount of increased earnings due to the employee's suggestion.
 
 
 4
 In June 1986, Jones, a Union member employed at Firestone's Oklahoma City plant, made a suggestion through the system which Firestone ultimately adopted. Jones was paid $2,250, but claimed that he was owed more. He filed a grievance with Local Union No. 998, United Rubber, Cork, Linoleum, and Plastic Workers of America ("Local 998") pursuant to its collective bargaining agreement. The Union requested arbitration on the grievance which Firestone refused.
 
 
 5
 When an arbitration hearing was scheduled, Firestone brought the instant action in the district court against Local 998 and the United Rubber, Cork, Linoleum, and Plastic Workers of America AFL-CIO, CLC, International Union ("the International Union"), seeking injunctive relief to prohibit the further processing of the grievance and also a declaration that the grievance was not arbitrable. By agreement, the Union withdrew the grievance from arbitration and Firestone withdrew its request for injunctive relief, both agreeing to await the district court's decision regarding arbitrability.
 
 
 6
 After both parties moved for summary judgment, the district court granted summary judgment in favor of Firestone and against Local 998 and the International Union. The Unions moved for reconsideration of the district court's order. The court denied the motion and Firestone then moved for sanctions against the Unions pursuant to Rule 11 of the Federal Rules of Civil Procedure. The district court denied that motion. A notice of appeal from the denial of the motion for reconsideration of the summary judgment order was filed. Firestone then filed a notice of appeal from the denial of its motion for sanctions.
 
 II
 
 7
 We turn first to an issue raised concerning compliance with Rule 3(c) of the Federal Rules of Appellate Procedure on the contents of the Unions' notice of appeal in No. 90-6319. Firestone argues that the failure to name the International Union as an appealing party in the notice of appeal divests us of jurisdiction over appellate claims of error by the International Union, leaving only Local 998 as an appellant in No. 90-6319.
 
 
 8
 Firestone is correct with respect to this defect in the notice of appeal. See Torres v. Oakland Scavenger Co., 487 U.S. 312, 314, 108 S.Ct. 2405, 2407, 101 L.Ed.2d 285 (1988). The notice states only that "defendant, Local Union No. 998, United Rubber, Cork, Linoleum and Plastic Workers of America, AFL-CIO, et al. (URW, Local 998)" appeals from the September 4, 1990 order. See I R.Doc. 67. The International was not named and the "et al." failed to provide the notice required by Rule 3(c). See Torres, 487 U.S. at 318, 108 S.Ct. at 2409. However, we fail to see the significance of Firestone's position on this point with respect to the main controversy since the Local can still assert the same appellate claims as the International Union and no distinction has been shown with respect to their interests. Because the International Union was not named in the notice of appeal, we are dismissing the International Union as an appellate party in No. 90-6319.
 
 III
 
 9
 We turn now to the merits of the question of arbitrability under the collective bargaining agreement.[2]
 
 
 10
 The well-established test for arbitrability of a grievance under a collective bargaining agreement was reviewed in AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). First, since arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Second, the question of arbitrability is undeniably an issue for judicial determination; unless the parties clearly and unmistakably provide otherwise, the question whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator. Third, in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. Fourth, where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' Doubts should be resolved in favor of coverage." 475 U.S. at 648-50, 106 S.Ct. at 1418-19 (quoting Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1352-53, 4 L.Ed.2d 1409 (1960)).
 
 
 11
 As the district court found, the Suggestion System had been initiated by Firestone years before its plants were unionized and applied to union as well as nonunion employees. It had never been the subject of collective bargaining, and the only times that there had ever been contact between the Union and Firestone about the Suggestion System were in two sets of circumstances: When, on occasion, Firestone sent unilateral notification to the Union that it was changing the program, and when Firestone denied all attempts to arbitrate grievances dealing with the Suggestion System. Moreover, the Suggestion System was complete in and of itself. It had its own set of internal procedures for review of grievances having to do with employee suggestions and provided that the decisions of the board set up to review such questions were final.
 
 
 12
 Assuming, arguendo, that the question whether the first prong of the AT & T test is satisfied is a close one (and we do not think it is), this case can be disposed of entirely with reference to the fourth prong of AT & T, for we think that there is no way in which the arbitration clause of the collective bargaining agreement can be stretched to cover grievances under the Suggestion System. Article XI of the collective bargaining agreement describes the grievance procedure. See R.Doc. 1 Ex. A at 68-75. The steps described for the handling of an employee grievance covered by that section are described as:
 
 
 13
 * Presentation of the problem to "Supervision in [the employee's] department."
 
 
 14
 * Submission of the grievance to the "Shift Foreman."
 
 
 15
 * Submission of the grievance in writing to the "Department Manager."
 
 
 16
 * Submission to the "Labor Relations Department."
 
 
 17
 * Arbitration.
 
 
 18
 See id.
 
 
 19
 On the other hand, the Suggestion System had its own internal procedures for all types of questions. For example, all awards in excess of $2,000 had to be approved by the Corporate Suggestion Board and an officer of Firestone. See R. Doc. 1 Ex.C at 5. Moreover, the Suggestion System contains the following regulations:
 
 K. FINALITY OF DECISION
 
 20
 DECISION BY THE SUGGESTION BOARD AND/OR THE SUGGESTION COORDINATOR ARE FINAL. IF AT ANY TIME, THE ORIGINAL SUGGESTER OR SUGGESTERS WISH TO REOPEN A SUBMITTED SUGGESTION TO PRESENT NEW OR ADDITIONAL INFORMATION, THE SUGGESTION BOARD AND/OR SUGGESTION COORDINATOR MAY, AT THEIR DISCRETION, REVIEW THEIR DECISION.
 
 L. RESERVATION OF RIGHTS
 
 21
 [FIRESTONE] RESERVES THE RIGHT TO CHANGE OR DISCONTINUE THE SUGGESTION SYSTEM AT ANY OR ALL OF ITS FACILITIES AT ANY TIME AFTER DUE NOTICE.
 
 
 22
 Id. at 6.
 
 
 23
 It is clear that the grievance system in the collective bargaining agreement was set up to handle what we might call "shop floor problems," such as employee-supervisor friction and the like. But given the way in which the Suggestion System was set up and administered, we fail to see what purpose it would serve to submit a grievance under the Suggestion System to the steps of the collective bargaining agreement's grievance section (which end with arbitration, we might add). Since decisions regarding suggestions are committed solely to the discretion of the bodies created by the Suggestion System itself for resolution with finality, it is clear that questions and grievances about those matters have no place within the grievance procedure of the collective bargaining agreement. Accord Peabody Galion v. A.V. Dollar, 666 F.2d 1309, 1320 (10th Cir.1982) (holding that when a remedy was provided by state statute, rather than the collective bargaining agreement, the arbitration clause of the collective bargaining agreement did not cover that right).
 
 
 24
 We are further impressed by the language of the arbitration section of the collective bargaining agreement itself. Section 2(a)(2) of the agreement states that only such grievances as are not exempt from arbitration and that concern "the interpretation or application of [the collective bargaining agreement] or any local plant Supplementary Agreement" shall be subject to arbitration. See R. Doc. 1 Ex.A at 70. The Suggestion System is nowhere mentioned in the collective bargaining agreement and the Suggestion System does not concern the interpretation of that agreement. We feel the circumstances support the nonarbitrability holding.
 
 
 25
 The district judge relied on Printing Specialties and Paper Products Union Local 680 v. Nabisco Brands, Inc., 833 F.2d 102 (7th Cir.1987). There was a provision in the collective bargaining agreement in Printing Specialties that the company agreed "to continue its present Pension Plan in full force and effect for the term of the agreement." Id. at 103. The Seventh Circuit held that this single reference to the Pension Plan did not cause a dispute over a claim of early retirement benefits by employees to be arbitrable under a grievance article of the bargaining agreement; there was no clear relationship between the Pension Plan and the bargaining agreement; and the Pension Plan was not established through collective bargaining with the union. Id. at 103-05. We also find this ruling persuasive here because of the separate structure of the two instruments, the absence of any reference to the Suggestion System in the bargaining agreement, and the history that the Suggestion System had been initiated by Firestone some years before its plants were unionized.
 
 
 26
 We are satisfied that the showing of nonarbitrability required by the fourth prong of AT & T has been made in this case. Therefore it was appropriate to grant summary judgment for Firestone and against the Unions, holding that the Suggestion System dispute in question was nonarbitrable.
 
 IV
 
 27
 We will now consider the questions raised concerning the trial judge's denial of Firestone's motion for sanctions against the Unions. First we will treat a motion by the Unions to dismiss Firestone's appeal from the order denying sanctions. The Unions argue that Firestone's notice of appeal was untimely.
 
 
 28
 The Unions say that Firestone failed to file its notice of appeal within 30 days of the order denying sanctions which it seeks to have reviewed. Firestone's notice of appeal was filed on October 17, 1990, seeking review of the district court's order of September 13, 1990 denying sanctions. It was thus 34 days after the trial judge's order and not in compliance with Rule 4(a) of the Federal Rules of Appellate Procedure. The Unions say that the district court's September 13, 1990 order was one denying costs, expenses and attorney fees to Firestone, that the September 13 order which Firestone seeks to appeal arose out of a separate motion filed by Firestone, and that Firestone failed to take any cross-appeal of the district court's September 4, 1990 summary judgment. Thus, the Unions contend that Firestone's appeal of the denial of sanctions was untimely. See the Unions' Motion to Dismiss [Firestone's] Cross Appeal With Supporting Brief at 1-2.
 
 
 29
 Firestone's brief in response contends that in noticing its cross-appeal, Firestone relied on Rule 4(a)(3), which extended its time for noticing a cross-appeal until October 18, 1990, so that Firestone's notice of appeal filed on October 17, 1990 from the denial of sanctions was timely.
 
 
 30
 We agree with Firestone's position. Firestone does not rely on the 30-day time limit allowed by Rule 4(a)(1) of the Federal Rules of Appellate Procedure for filing a notice of appeal. Firestone points out that it was entitled to a 14-day extension by virtue of Rule 4(a)(3), which provides that
 
 
 31
 If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period last expires.
 
 
 32
 Since the Union's notice of appeal from the denial of reconsideration of the summary judgment for Firestone was filed on October 4, 1990 (the last day on which that notice of appeal could have been filed), Firestone's notice of appeal was not due for 14 days, or until October 18, 1990. It was one day early when filed on October 17, 1990.
 
 
 33
 It is true that there is a question whether the appeal from the separate order denying sanctions comes within the time extension provision of Rule 4(a)(3). Rule 4(a)(3) could be interpreted to grant an extension for the notice of appeal only where an appeal is taken from an unfavorable part of the very same judgment appealed by an adversary. However, the history of Rule 4(a)(3) shows that such a technical interpretation is not in accord with commentary on the time extension provisions, which originated in Rule 73(a) of the Federal Rules of Civil Procedure as amended in 1966. The committee which recommended adoption of the amendment to Rule 73(a) (the forerunner to Rule 4(a)(3)) to encompass the 14-day extension for other parties stated:
 
 
 34
 The added time which may be made available by the operation of the provision is not restricted to cross appeals in the technical sense, i.e., to appeals by parties made appellees by the nature of the initial appeal. The exception permits any party to the action who is entitled to appeal within the time ordinarily prescribed to appeal within such added time as the sentence affords.
 
 
 35
 Kurdziel v. Pittsburgh Tube Company, 416 F.2d 882, 884 (6th Cir.1969) (quoting 9 Moore, Federal Practice p 73.01, at 3127 (2d ed. 1968)) (emphasis added). We believe the Kurdziel decision supports Firestone's position here. There an appeal by Travelers from an adverse ruling on a third-party claim against it was held timely under Rule 73(a)(3), the forerunner of Rule 4(a)(3). There had been a timely appeal by the plaintiff Kurdziel from an adverse judgment on the principal claim. Travelers' notice of appeal of the ruling against it on a third-party claim was filed 33 days after the judgment on the principal claim, but it was held timely under Rule 73(a)(3) because it was filed within 14 days after the timely notice of appeal from the judgment on the principal claim.
 
 
 36
 We are not persuaded that the technical interpretation urged by the Unions should be adopted. Instead, we hold that Rule 4(a)(3) did afford Firestone a 14-day extension within which to file its appeal from the order denying sanctions.
 
 
 37
 Turning to the merits of the sanctions ruling, we do not believe that the district court erred in finding that the filing of the motion for reconsideration did not violate Rule 11. Faced with a serious Rule 11 motion, a district court must explain why the conduct in question did not violate the rule. See Griffen v. City of Oklahoma City, 3 F.3d 336, 341 (10th Cir.1993). The district court here did so in a four-page order which clearly set out the legal and factual bases for the parties' actions and explained why that conduct, while annoying the court and being "overzealous," did not call for sanctions.
 
 
 38
 We review the refusal of the district court to impose sanctions for an abuse of discretion. See id. The court found that there was no reason to conclude that the filing of the motion for reconsideration was objectively unreasonable, applying the correct standard for evaluation of counsels' conduct.[3] See White v. General Motors Corp., Inc., 908 F.2d 675, 680 (10th Cir.1990), cert. denied, 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991). We feel that the reasons given for the denial of sanctions clearly support the ruling. We hold that the district court did not abuse its discretion in denying sanctions. See Griffen, supra, 3 F.3d at 342.
 
 V
 
 39
 For the foregoing reasons, the decisions of the district court in No. 90-6319 are AFFIRMED. In No. 90-6330, the motion of the Unions to dismiss Firestone's appeal of the order denying sanctions is DENIED. The order denying sanctions appealed in No. 90-6330 is AFFIRMED.
 
 
 
 [1]
 The district court had jurisdiction of this suit by virtue of Sec. 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185, which provides that "[s]uits for violation of contracts between an employer and a labor organization ... may be brought in any district court of the United States having jurisdiction of the parties...." 29 U.S.C. Sec. 185(a). The federal courts thus have jurisdiction to determine whether or not an employer is bound by a collective bargaining agreement to arbitrate a particular dispute. See Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962); International Association of Heat and Frost Insulators and Asbestos Workers, Local 66, AFL-CIO v. Leona Lee Corp., 434 F.2d 192, 194 (5th Cir.1970) (per curiam)
 
 
 [2]
 Firestone raises a preliminary question whether Local 998's appeal in No. 90-6319 of the denial of reconsideration of the grant of summary judgment operates as an appeal of the summary judgment
 Since the motion to reconsider was filed within ten days after entry of the summary judgment order, we construe the motion as one made under Rule 59(e) of the Federal Rules of Civil Procedure to alter or amend the judgment. See Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir.1991), cert. denied, --- U.S. ----, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992); Dalton v. First Interstate Bank of Denver, 863 F.2d 702, 703 (10th Cir.1988). Firestone acknowledges that Jones v. Nelson, 484 F.2d 1165 (10th Cir.1983), is arguably at odds with this procedural position urged by Firestone. Indeed, Jones held that it was clear that the appeal there from an order overruling a motion for a new trial probed the validity of the summary judgment involved. Id. at 1168. Here it is likewise clear that the challenge made by the appeal is to the district court's holding of nonarbitrability expressed in the summary judgment. That determination of nonarbitrability is subject to de novo review. See O'Connor v. R.F. Lafferty & Co., Inc., 965 F.2d 893, 901 (10th Cir.1992). We thus reach the merits of the nonarbitrability holding.
 
 
 [3]
 Essentially, the court noted that neither side was able to find authority squarely on point and thus had to reason by analogy and make legal "judgment calls" on what authority to cite to the court. The court found that the motion for reconsideration was the Local's attempt to correct its mistaken judgment call and, while "overzealous," was not outside the realm of what reasonable, competent attorneys might do under the circumstances. We see no reason to doubt that conclusion