**VALLEY DECKING COMPANY, a Colorado corporation, Plaintiff,**

v.

**LOCAL UNION NO. 9 OF the SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, Defendant.**

Civ. A. No. 92–B–1870.

United States District Court, D. ·Colorado.

Jan. 14, 1994.

Timothy J. Parsons, David B. Seserman, Maureen Herr Juran, Gorsuch, Kirgis, Campbell, Walker and Grover, Denver, CO, for plaintiff.

Martin D. Buckley, Mark A. Redmiles, Berenbaum & Weinshienk, P.C., Denver, CO, for defendant.

MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

This litigation arises from metal roof decking work that was completed on the Denver International Airport (DIA) project by individuals other than the defendant Local Union No. (Union 9) sheet metal workers. The plaintiff Valley Decking Company (Valley)

seeks to vacate the National Joint Adjustment Board's (NJAB's) arbitration award entered against it on the ground that the NJAB exceeded its jurisdiction in entering the award. Cross motions for summary judgment have been filed. Because the NJAB had jurisdiction to enter its order and because the award drew its essence from the collective bargaining agreement (CBA), I will grant Union 9's motion for summary judgment and deny Valley's motion. I will also dismiss this case with prejudice.

## I.

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Here, both parties move for summary judgment and neither party contends that there are material issues of fact precluding a judgment as a matter of law. Furthermore, neither party responds to the other's summary judgment motion with specific facts demonstrating a genuine issue for trial. I agree that there are no genuine disputes of material fact and that summary judgment is now appropriate.

## II.

The following facts are undisputed. Valley and Union 9 are parties to the Sheet Metal Workers Standard Form of Union Agreement (A–3–89) as Amended, Modified & Revised for the Sheet Metal, Roofing, Ventilating and Air Conditioning Contracting Divisions of the Construction Industry of Colorado (CBA). In the CBA, executed on July 1, 1989, Valley contractually agreed to use Union 9's sheet metal workers for all metal roof decking work. Valley and Union 9 also agreed to arbitrate any unresolved disputes before the Local Joint Arbitration Board (LJAB), and in the event of a deadlock, a party could appeal the decision to the NJAB. See CBA, Article X at 44–50. Before this agreement was executed, there was a Standard Form of Union Agreement between Union 9 and the Sheet Metal and Air Conditioning Contractors National Association (SMACNA) dated July 1, 1987. There are no differences between the relevant language of the 1987 agreement and the CBA. Valley authorized SMACNA to act on its behalf in the 1987 labor negotiations with Union 9.

On May 19, 1989, authorized representatives of Union 9 signed the Project Agreement of Fair Employment and Work Stabilization for New Denver Airport (Project Agreement). The Project Agreement applies to construction work performed at the DIA. In relevant part, the Project Agreement provides in Article XI, titled "Disputes and Grievances":

11.1 All parties to this Agreement realize the importance of maintaining continuous and uninterrupted performance of the work of the Project, and agree to resolve disputes in accordance with the grievance-arbitration provisions set forth in this Article....

11.3 Grievance Procedure and Arbitration. It is specifically agreed that in the event any employee disputes arise out of the interpretation or application of the Agreement, they shall be settled by means of the procedure set out herein ... The Unions shall have an option with respect to grievances to either follow the procedure set forth herein or use the procedure set forth in their applicable Collective Bargaining Agreement....

Article XII of the Project Agreement concerns "jurisdictional disputes". It provides in relevant part:

12.1 The assignment of work for Signatory Contractors will be solely the responsibility of the Employer performing the work involved....

12.2 For Signatory Contractors, all jurisdictional disputes shall be resolved without the occurrence of strikes, work stoppages or slow downs of any nature, ...

The Signatory Contractors hereto agree that all jurisdictional disputes over division of work with crafts affiliated with the Colorado Building and Construction Trades Council, AFL–CIO, will be settled in accordance with the procedural rules and regulations of the Plan for the Settlements

of Jurisdictional Disputes in the Construction Industry, effective June 1, 1984 ... The Project Agreement defines a "Signatory Contractor" as those contractors working on the Project who are signatory to any collective bargaining agreements ... with any of the Unions listed on signature pages 22 and 23. See Project Agreement at 2, ¶ 1.8.

From June 30, 1991 through November 4, 1991, Ridge Erection Company (Ridge) performed work at DIA. From June 30, 1991 to August 2, 1991, Valley worked as a subcontractor at DIA. On December 31, 1991, Mike Salazar (Salazar), Union 9's Business Representative, first contacted Valley, by letter, concerning the installation of decking and metal siding on buildings at DIA. Steven L. "Gus" Price (Price), president of both Ridge and Valley, responded to Salazar's letter.

On February 7, 1992, Union 9 filed an unfair labor practice charge with the National Labor Relations Board (NLRB) against Valley. Shortly thereafter, Union 9 filed a grievance with the LJAB under the CBA. Price sent a letter to the LJAB stating Valley's position regarding Union 9's grievance. In it, he asserted the following arguments: 1) it is inappropriate for the LJAB to consider the grievance while Union 9's charge of unfair labor practices concerning the same issues is pending before the NLRB; 2) Ridge, not Valley, is the contractor on the contested project, Ridge and Valley are separate companies, and Ridge is not signatory to any agreement with Union 9; and 3) the LJAB has no jurisdiction to hear this grievance because it must be resolved by the procedures in the Project Agreement, and the Project Agreement supersedes the CBA.

Next, Union 9's unfair labor practice charge, filed with the NLRB, was withdrawn. On the same day, the LJAB issued a notice that they were deadlocked on Local 9's grievance. Pursuant to the CBA, Union 9 appealed this deadlock decision to the NJAB. In response to the NJAB's request for information, Timothy J. Parsons (Parsons), Valley's attorney, sent a letter to Deborah A. Wyandt, Administrator for the NJAB. In arguing that Union 9's grievance was without merit and should be summarily dismissed, Parsons set forth virtually the identical arguments that Price had asserted in his letter to the LJAB.

The NLAB held a hearing on Union 9's grievance on May 19, 1992. Salazar testified as a witness for Union 9. Price testified on Valley's behalf. In his affidavit submitted here, Price states that he attended the NJAB hearing solely to object to their jurisdiction to hear this dispute. However, after Union 9 argued that Ridge controlled Valley, Price responded by testifying that Ridge and Valley are separate entities because their stock ownership is different.

On June 24, 1992, the NJAB panel issued a unanimous decision, which included panelists' minutes, articles and sections of agreement involved in the dispute, position of the parties, and evidence in support thereof. The panel determined that articles I and III of the CBA had been violated and 487 hours of work performed by iron workers employed by Valley on the DIA project should have been performed by Union 9 sheet metal workers at the rate of $23.26 per hour. As damages, the panel ordered Valley to pay Union 9's Health and Welfare Fund $11,327.62.

### III.

■ Valley seeks to vacate the NJAB's decision on the ground that they exceeded their jurisdiction in entering the award. The Tenth Circuit, relying on *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) recently reviewed the well-established test for arbitrability of a grievance under a collective bargaining agreement. *See, Bridgestone/Firestone, Inc. v. Local Union No. 998*, 4 F.3d 918, 921 (10th Cir.1993). Because arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. *Id.* The question of arbitrability is undeniably an issue for judicial determination unless the parties clearly and unmistakably provide otherwise. *Id.*

■ Because arbitration is rooted in the agreement of the parties, they may agree to submit arbitrability questions to arbitration

in addition to the merits of a dispute. *See, e.g., United Steelwkrs. of A. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Specifically, the parties may agree to extend the arbitrator's authority in their submissions. *United Food and Commercial Workers Local 7R v. Safeway Stores, Inc.*, 889 F.2d 940, 946 (10th Cir.1989). Agreement to arbitrate may also be implied from the parties' conduct. *Franklin Elec. Co. v. International Union, United Auto. Aerospace and Agr. Implement Workers of America (UAW)*, 886 F.2d 188, 191 (8th Cir.1989).

■ In this case, Union 9 clearly demonstrates that Valley agreed to submit to the LJAB and the NJAB the question of whether Union 9's grievance should be resolved by the procedures set forth in the Project Agreement or the CBA. Price's letter to the LJAB and Parson's letter sent subsequently to the NJAB support this conclusion notwithstanding Valley's arguments to the arbitrators that they lacked jurisdiction over Union 9's grievance. Furthermore, Price testified at the NJAB's hearing on Valley's behalf concerning the jurisdictional question as well as to contest the merits of Union 9's grievance. At no time did Valley expressly reserve the jurisdictional question for judicial resolution. Furthermore, if Valley did not want to submit this question to arbitration, Valley could have refused to arbitrate, thereby forcing Union 9 to petition the district court to compel arbitration, or it could have sought declaratory and injunctive relief before the arbitration began. *See generally, Id.* Had Valley chosen any of these options, the district court, rather than the NJAB, would have made the initial jurisdictional determination.

While the question of arbitrability is generally an issue reserved for judicial determination, in this case, Valley and Union 9's conduct clearly contemplated and, therefore, empowered the NJAB to make this determination. Accordingly, the NJAB was justified in exercising its jurisdiction over Union 9's grievance against Valley.

■ Next, I turn to the merits of the NJAB's award. The scope of my review here is considerably more limited. The standard of review of arbitration awards is among the narrowest known to the law. *International Broth. of Elec. Workers, Local Union No. 611, AFL–CIO v. Public Service Co. of New Mexico*, 980 F.2d 616, 618 (10th Cir.1992). The arbitrator's decision will be enforced if it draws its essence from the parties' agreement and is not merely the arbitrator's own brand of industrial justice. *United Steelwkrs. of A. v. Enterprise W. & C. Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). Even where a party believes it is based on erroneous findings of fact or misinterpretations of the CBA, I may not review the merits of the arbitrator's award. *United Paperworkers Intern. Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 369, 98 L.Ed.2d 286 (1987). An award should not be interfered with "unless it can be said with positive assurance that the contract is not susceptible to the arbitrators' interpretation". *Safeway Stores, Inc.*, 889 F.2d 940, 947 (10th Cir.1989). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision". *Id.* (quoting *Misco*, 484 U.S. at 38, 108 S.Ct. at 371).

■ The NJAB's award was clearly based on the CBA. Valley offers no arguments to the contrary. The panel expressly concluded that Valley violated articles I and III of the CBA. This violation gave rise to Union 9's grievance and, accordingly, Union 9 was awarded damages. See NJAB's Unanimous Decision. Because the NJAB's award draws its essence from the CBA and is not contrary to the express language of that agreement, the award is enforceable. *Safeway Stores, Inc.*, 889 F.2d at 947.

ACCORDINGLY, IT IS ORDERED that:
1) Union 9's motion for summary judgment IS GRANTED and judgment shall enter in its favor for $11,327.62 plus interest and costs; and
2) Valley's motion for summary judgment IS DENIED.