**SAMSON RESOURCES COMPANY,**
**Plaintiff,**

v.

**INTERNATIONAL BUSINESS**
**PARTNERS, INC.,**
**Defendant.**

**No. 94–C–934–H.**

United States District Court,
N.D. Oklahoma.

April 7, 1995.

---

Jack A. Canon, Kimberly A. Flanery, Geodyne Resources, Inc., Tulsa, OK, for Samson Resources Company.

C. Robert Burton, IV, R. Thomas Seymour, F. Randolph Lynn, Tulsa, OK, for International Business Partners, Inc.

### ORDER

HOLMES, District Judge.

This matter comes before the Court on a Motion to Compel Arbitration by Defendant, International Business Partners, Inc. ("IBP").

If a claim is subject to arbitration, then federal courts lack subject matter jurisdiction over the claim. *Lockhart v. A.G. Edwards & Sons,* 65 Fair Emp.Prac.Cas. (BNA) 5, 5–6, 1994 WL 34870 (D.Kan.1994). As the Supreme Court stated in *Southland Corp. v. Keating,* 465 U.S. 1, 7, 104 S.Ct. 852, 856–57, 79 L.Ed.2d 1 (1984), "[c]ontracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. *See also* 9 U.S.C. § 2 (1988).

In the present case, Plaintiff Samson Resources Company ("Samson") has brought this action alleging, *inter alia,* that Defendant International Business Partners, Inc. ("IBP") has received payments from a joint venture known as AMKOMI (the "Venture"), and that, in contravention of a letter agreement between Samson and IBP dated April 21, 1993 and executed by IBP on May 11 (the "Letter Agreement"), has failed to pay Samson its proportionate share of those payments. IBP filed the instant motion seeking an order staying this lawsuit and compelling arbitration of the dispute, based on the arbitration provision contained in the joint venture agreement (the "Agreement").

In response to Defendant's motion, Samson argues that it is not a signatory to the Agreement and therefore cannot be bound by the arbitration provisions set forth therein. Samson further argues that the dispute between the parties is not a controversy arising "in connection with" the Agreement, and thus, even if Samson were subject to the arbitration provision, the provision itself is not applicable to this dispute.

Based upon a careful reading of the rights and obligations of the parties set forth in the relevant documents, the Court concludes that the arguments of Samson must fail.

The Agreement was executed by IBP, Samson–Firebird, Inc. ("Firebird"), an affiliate of Samson,[1] and certain other joint venturers. The Agreement provides, in relevant part, as follows:

Article 21.1  The Participants[2] shall use best efforts to resolve all disputes and controversies arising in connection with this agreement through negotiation.

Article 21.2  *All disputes and controversies arising among the Participants that cannot be resolved through negotiation will be conclusively resolved by arbitration, either:* (1) by an arbitrator appointed by the Stockholm Chamber of Commerce in proceedings conducted in

---

1. Firebird was incorporated in connection with Samson's decision to participate in the Venture for the purpose of receiving certain beneficial tax treatment afforded an offshore company registered in the Republic of Cyprus which conducts business in Russia. Affidavit of Annabel M. Jones, sworn to January 27, 1995, ¶ 3.

2. "Participant" is defined under the Agreement to mean all parties to the Agreement. The parties agree (and the Agreement reflects) that Firebird, and not Samson, is a party to the Agreement.

Stockholm, Sweden, in English and in accordance with the arbitration rules of that Chamber (but without regard to the conflicts rules thereof or of the laws of Sweden), or (2) by the arbitral tribunal of the Russian Chamber of Commerce and Industry in Moscow. (emphsis added)

The Venture is governed by a Board of Directors which derives its power from the Agreement and the AMKOMI charter (the "Charter").[3] Pursuant to its authority under the Agreement and the Charter, the Board met on March 18, 1993 solely to consider the withdrawal of certain "Foreign Partners". Protocol 11 reflects the actions of the Board at this meeting and states in applicable part as follows:

1. The sum of 2 432 349.50 USD shall be reimbursed to IBP at "AmKomi" JV Expense.

2. The said sum shall be transferred to IBP account before June 1, 1993. The procedure of this transaction will be stipulated in a separate Agreement between "AmKomi" JV Founders.

3. The said sum consists of the investment made into " "AmKomi JV Charter Fund and expenses related to "AmKomi" activities on the part of IBP.

4. The foreign partners (IBP and "Samson") have agreed to withdraw from "AmKomi" by transferring their rights and obligations to a new foreign partner(s) suggested by the Russian founders subject to a separate agreement between the Partners (Founders) and "AmKomi" JV where the procedure of transferring of 2 432 349.50 USD to IBP account shall be stipulated.

Samson and IBP entered into the Letter Agreement with respect to the above-referenced payment to IBP by the Venture pursuant to Protocol 11. Samson claims a right to payment from IBP under the terms of the Letter Agreement. In applicable part, the Letter Agreement provides as follows:

The purpose of this letter is to confirm our understanding regarding the withdrawal of International Business Partners, Inc. ("IBP") and Samson Resources Company ("Samson") from the AMKOMI Joint Venture (the "Venture"). *Pursuant to Protocol No. 11 of the Board of Directors of the Venture, dated March 18, 1993, the Board of Directors unanimously agreed to reimburse IBP the sum of US $2,432,-349.50 on or before June 1, 1993 in exchange for the agreement by IBP and Samson to withdraw from the Venture.*
. . .

Samson and IBP agree that within five business days of the receipt by IBP of all or any portion of the remaining balance of U.S. $2,207,782.06 due from the Venture pursuant to Protocol No. 11, IBP shall forward to the client trust account of the law firm of Graham and James, One Maritime Plaza, Third Floor, San Francisco, California 94111 by wire transfer of immediately available U.S. funds an amount equal to 8.22% ($200,000 [ ] $2,432,349.50) of such funds received by IBP with the understanding that upon IBP's receipt of the entire remaining balance of U.S. $2,207,782.06 the total amount of U.S. $200,000 will have been transmitted as described above . . ." (emphasis added)

Referencing Protocol 11, the Letter Agreement refers to "the agreement by IBP and Samson to withdraw from the Venture." Samson, however, was neither a signatory to the Agreement nor a party to the Venture. Firebird, Samson's affiliate, was both a signatory to the Agreement and a party to the

---

**3.** The Charter provides in pertinent part as follows:

Section 7.1 The Board [of Directors] is the supreme organ of the Joint Venture. . . . The Board is competent to make any decisions in any field of the activities of the Joint Venture, if in the Board meeting there take part these members, who represent every participant, and are recognized by the General Director of the Joint Venture, who as a member of the Board, has an equal vote with other members of the Board.

Section 7.13 The Board is competent for all the aspects of the Joint Venture's activities. The Board must in all possible ways promote the achievement of the aims and tasks of the Joint Venture. The Board must make efforts to provide for the fulfillment of the obligations of the participants. In case the obligations are not fulfilled, the Board must inform the participants about this event immediately.

Venture. Thus, only Firebird, and not Samson, can "withdraw from the Venture."

It is clear that the Letter Agreement sets forth certain obligations of IBP with respect to any payment to it by the Venture pursuant to Protocol 11. This payment is in consideration of the withdrawal of Firebird and IBP from the Venture. The Letter Agreement further sets out the procedure by which IBP is to forward a portion of those funds (up to $200,000) to Samson. The funds which IBP agreed to pay Samson represent a portion of the capital investment in the Venture. *See* Affidavit of Gregg E. Fairbrothers, sworn to November 30, 1994, ¶ 4 ("Samson and IBP agreed by Letter Agreement dated April 21, 1993, to withdraw from the AMKO-MI joint venture, and agreed on a method for each party to recoup a portion of their capital investment in the joint venture.").

It is precisely those funds which are the subject of the present lawsuit. Samson has no independent claim to any funds paid by the Venture to IBP in return for the withdrawal of IBP and Firebird from the Venture. Any rights to such funds belong to Firebird. The fact that Samson is not a signatory to the Agreement is not relevant. The dispute at issue involves the rights of Firebird to its share of any payments from the Venture. Samson is asserting Firebird's rights in this action and, therefore, must be bound by Firebird's obligations. Because Firebird was a "Participant" under the Agreement, any dispute in connection with Firebird's rights is subject to the arbitration clause set forth in Article 21.1.

Plaintiff further argues that the arbitration provision does not cover the dispute between Samson and IBP about the $200,000. The Court disagrees.

■ It is settled law that arbitration is a matter of contract. *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); *Bridgestone/Firestone, Inc. v. Local Union No. 998,* 4 F.3d 918, 921 (10th Cir.1993). Furthermore, the question of arbitrability is for the court to decide. *AT & T Technologies, Inc.,* 475 U.S. at 649, 106 S.Ct. at 1418–19; *Bridgestone/Firestone, Inc.,* 4 F.3d at 921.

■ Articles 21.1 and 21.2 of the Agreement require "all disputes and controversies arising among the Participants" in connection with the Agreement to be submitted to arbitration. In reviewing the language of the arbitration provision, the Court is guided by the principle that "arbitration agreements are favored and are to be broadly construed with doubts being resolved in favor of coverage." *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 13 F.3d 330, 332 (10th Cir. 1993); *AT & T Technologies, Inc.,* 475 U.S. at 650, 106 S.Ct. at 1419. The policy favoring arbitration is "even stronger in the context of international business transactions." *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London),* 923 F.2d 245, 248 (2d Cir.) ("Enforcement of international arbitral agreements promotes the smooth flow of international transactions by removing the threats and uncertainty of time-consuming and expensive litigation."), *cert. dismissed,* 501 U.S. 1267, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991).

■ Because the dispute arises out of Samson's desire to recover funds, on behalf of Firebird, which represent a payment by the Venture in consideration of Firebird's withdrawal, the dispute arises "in connection with" the Agreement. Therefore, the arbitration provision clearly covers the dispute at issue.

Based on the foregoing, the Court hereby grants Defendant's motion to compel arbitration and stays this action pending the completion of arbitration.

IT IS SO ORDERED.