**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 17 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOHN ALTON WOODRUFF,

     Plaintiff - Appellee,

and

UNITED STATES OF AMERICA,

     Defendant - Appellee,

v.

C. THOMAS COVINGTON, M.D.;
JIHAD AHMAD, M.D.; CENTRAL
OKLAHOMA AMERICAN INDIAN
HEALTH COUNCIL, INC., an
Oklahoma Nonprofit Corporation d/b/a
Oklahoma City Indian Clinic;
OKLAHOMA CITY INDIAN
CLINIC;

     Defendants - Appellants.

Nos. 02-7040 & 02-7051

---

**Appeal from the United States District Court
for the Eastern District of Oklahoma
(D.C. No. 01-CV-583-S)**

---

Gary S. Pitchlynn (Patrick A. Morse and O. Joseph Williams, Pitchlynn & Morse,
P.A., Norman, Oklahoma, and Stephen Peterson and Michael S. McMillin,
Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Oklahoma, with him on
the briefs), Pitchlynn & Morse, P.A., Norman, Oklahoma, for Defendants-

Appellants Central Oklahoma American Indian Health Council, Inc. and Jihad Ahmad, M.D.

Perry T. Marrs, Jr. and William C. Medley IV, Short Wiggins Margo & Butts, Oklahoma City, Oklahoma, on the briefs for Defendant-Appellant C. Thomas Covington, M.D.

Madeline Henley, (Robert D. McCallum, Jr., Asst. Attorney General, Sheldon J. Sperling, United States Attorney, Jeffrey Axelrad, Director of Department of Justice Torts Branch, with her on the briefs) Department of Justice Torts Branch, Washington, D.C., for Defendant-Appellee United States of America.

H. Buckmaster Coyne, Jr., George W. Braly, Braly & Braly and Coyne, Ada, Oklahoma, on the briefs for Plaintiff-Appellee John Alton Woodruff.

---

Before **EBEL, ANDERSON,** and **MURPHY**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

After receiving allegedly substandard medical care, John Alton Woodruff ("Plaintiff") brought a malpractice action against Drs. C. Thomas Covington and Jihad Ahmad, as well as the Central Oklahoma American Indian Health Council ("COAIHC"), the Carl Albert Indian Health Facility ("Carl Albert Hospital"), and the United States of America (named as defendant for Carl Albert Hospital). Dr. Covington filed a motion to dismiss on the grounds that he was a federal employee under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), and thus the United States was the only proper defendant. The COAIHC and Dr. Ahmad then filed a motion to substitute the United States for them on the grounds

that the COAIHC was a federal agency and Dr. Ahmad was a federal employee under the FTCA. The district court denied both of these motions under the rationale that these defendants were not federal employees and that Congress did not expressly extend the FTCA to them. We now AFFIRM the court's finding that Appellants are not "federal employees" under the FTCA and that Congress did not extend FTCA immunity to Appellants in enacting 25 U.S.C. § 1660b(a) of the Indian Health Care Improvement Act ("IHCIA").

## BACKGROUND

Defendant Central Oklahoma American Indian Health Council, Inc. ("COAIHC") is an Oklahoma non-profit corporation that was organized for the purpose of providing health services to Indians residing in the Oklahoma City area. COAIHC operates the Oklahoma City Indian Clinic ("the Clinic") in Oklahoma City, Oklahoma, which was created to serve as a demonstration project for providing health care to Indians living in urban areas with unmet health needs. 25 U.S.C. § 1660b(a). COAIHC was created as a part of the implementation of Title V of the Indian Health Care Improvement Act (IHCIA), 25 U.S.C. §§ 1651 and 1660. Dr. Covington and Dr. Ahmad are employees of COAIHC and the Clinic.

Plaintiff John Alton Woodruff ("Plaintiff") sought examination, diagnosis, and treatment of hematuria from the Clinic, Carl Albert Indian Hospital, and Drs. Covington and Ahmad. On October 18, 2001, Plaintiff filed a complaint in the Eastern District of Oklahoma against the Clinic, Carl Albert Indian Hospital, Dr. Covington, Dr. Ahmad, and the United States of America,[1] alleging that their negligence resulted in the surgical removal of his bladder.

On November 26, 2001, Defendant Dr. Thomas Covington filed a motion to dismiss on the grounds that he was a federal employee under the Federal Tort Claims Act (FTCA), and thus the United States was the only proper defendant. The district court denied this motion on January 23, 2002, finding that Dr. Covington was not entitled to immunity as a federal employee.

On January 31, 2002, Defendants COAIHC and Dr. Jihad Ahmad then filed a motion to substitute the United States for them, on the grounds that the COAIHC was a federal agency and Dr. Ahmad was a federal employee under the Federal Tort Claims Act. The district court denied this motion on March 1, 2002, finding that neither defendant was entitled to immunity under the FTCA "for substantially the same reasons set forth in the court's 1-23-02 order" denying Dr. Covington's motion to dismiss.

---

[1]The United States was named as a defendant for the Carl Albert Hospital and its employees, and has admitted that it was properly so named.

Defendants COAIHC, Covington, and Ahmad ("Appellants") now appeal these orders denying FTCA immunity.

## DISCUSSION

### A.     Jurisdiction

Before delving into the merits of Appellants' claims of FTCA immunity, we first address the issues of whether Dr. Covington's appeal was timely under Federal Rule of Appellate Procedure 4, and whether the two district court orders were "final" under the "collateral order" doctrine so as to allow our exercise of jurisdiction under 28 U.S.C. § 1291.[2]

### 1.     Was Dr. Covington's Notice of Appeal Timely?

The government argues that Dr. Covington's notice of appeal was untimely filed, and that we thus lack jurisdiction. We disagree and hold that the notice of appeal was timely under Rule 4(a)(3).

The time limits of Rule 4 are "prerequisite[s] to our jurisdiction." Utah Women's Clinic, Inc. v. Leavitt, 75 F.3d 564, 566 (10th Cir. 1995). Under Rule 4, an appellant in a civil case where the United States is a party has sixty days

_____

[2]The district court properly exercised jurisdiction over the Carl Albert Hospital and the United States pursuant to 28 U.S.C. § 2671, and over the other defendants pursuant to its supplemental jurisdiction under 28 U.S.C. § 1367(a).

- 5 -

after the order is entered in which to file a notice of appeal. Fed. R. App. P. 4(a)(1)(B). However, if one party timely files a notice of appeal, any other party may file a notice of appeal within fourteen days after the date when the first notice was filed. Fed. R. App. P. 4(a)(3).[3]

On March 25, 2002, the COAIHC and Dr. Ahmad filed their notice of appeal from the order dated March 1, 2002. Their notice of appeal was thus timely under Rule 4(a)(1)(B). Dr. Covington then filed his notice of appeal from the January 23, 2002 order on April 1, 2002. Because he filed his notice of appeal within fourteen days of the COAIHC and Dr. Ahmad's notice of appeal, Dr. Covington's notice was timely under Rule 4(a)(3).

The government argues that Dr. Covington's notice of appeal should not be covered by Rule 4(a)(3)'s additional fourteen days because he appealed a different order than the one appealed by the COAIHC and Dr. Ahmad. However, we have clearly held that the application of Rule 4(a)(3) is not restricted to circumstances in which the second party's appeal is taken from the same order appealed by the first party. See Bridgestone/Firestone, Inc. v. Local Union No. 998, 4 F.3d 918, 924 (10th Cir. 1993). In Bridgestone/Firestone, we stated that "the history of Rule 4(a)(3) shows that such a technical interpretation [as

---

[3]The time limits in Rule 4 are applicable to collateral order appeals like the one before us. Southern Ute Indian Tribe v. Amoco Prod. Co., 2 F.3d 1023, 1028-29 (10th Cir. 1993).

advocated by the government] is not in accord with commentary on the time extension provisions." Id. Specifically, we cited the commentary to the rule's predecessor, which provided:

> The added time which may be made available by the operation of the provision is not restricted to cross appeals in the technical sense, i.e., to appeals by parties made appellees by the nature of the initial appeal. The exception permits any party to the action who is entitled to appeal within the time ordinarily prescribed to appeal within such added time as the sentence affords.

Id. (quotation, emphasis omitted); see also Murphy v. Arkansas, 127 F.3d 750, 753 n.2 (8th Cir. 1997) (rejecting the defendants' argument "that the cross-appeal is untimely because Rule 4(a)(3) is limited to a cross-appeal from an unfavorable part of the judgment or order initially appealed.").

Before Rule 4 was enacted,

> [a] party who desired to appeal only if some other party took an appeal either had to forego his desire not to appeal and file a notice of appeal, thereby possibly provoking other appeals that might not have been taken if his had not been; or he had to keep watch at the clerk's office during the final days of the time for appeal in order to be sure that he would learn of the fact of the appeal of another in time to take his own.

Jackson Jordan, Inc. v. Plasser Am. Corp., 725 F.2d 1373, 1375 (Fed. Cir. 1984) (quotation omitted). The purpose behind this broad interpretation of Rule 4(a)(3) is to give effect to the rule's purpose of "eliminating the necessity for so-called protective appeals and the wasteful practice of keeping watch at the office of the clerk." Id. (quotation omitted). This policy is furthered by allowing any party to

file a notice of appeal from any order within fourteen days after another party appealed a decision of the district court.

Because Dr. Covington filed his notice of appeal within fourteen days after another party in his case filed a timely notice of appeal, Dr. Covington's filing was timely under Rule 4(a)(3), even though the notice designated appeal from a different order in the case.[4]  See Bridgestone/Firestone, 4 F.3d at 924.

**2.    Does This Court Have Jurisdiction Under the "Collateral Order" Doctrine?**

The government argues that we lack jurisdiction over both of the appeals at hand because neither of the district court's orders were "final" under 28 U.S.C. § 1291.  We disagree and find that both orders fall under the "collateral order" doctrine set forth by the Supreme Court in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949).

Section 1291 provides for appeal "from all final decisions of the district courts."  28 U.S.C. § 1291.  The Supreme Court has "repeatedly interpreted § 1291 to mean that an appeal ordinarily will not lie until after final judgment has been entered in a case."  Cunningham v. Hamilton County, Ohio, 527 U.S. 198,

---

[4]Because Dr. Covington's notice of appeal was timely in its own right, we need not address the government's argument that Dr. Covington should not be allowed to "join" the appeal of the COAIHC and Dr. Ahmad because he lacks standing.

203 (1999). Typically, a judgment is not "final" unless it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Id. at 204 (quotations omitted). This "final judgment rule" serves several purposes, including allowing the trial judge to do his or her job without interlocutory appellate interference, reducing obstructions to just claims and avoiding the harassment and cost of separate appeals, and promoting judicial administration. Id. at 203-04.

However, in Cohen, the Supreme Court "interpreted the term 'final decision' in § 1291 to permit jurisdiction over appeals from a small category of orders that do not terminate the litigation." Cunningham, 527 U.S. at 204 (citing Cohen, 337 U.S. at 545-47). "That small category includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." Id. (quotation omitted). The Cohen Court explained this "collateral order" doctrine[5] as follows:

---

[5]Although some courts and commentators refer to this doctrine as the "collateral order *exception*" to the final judgment rule, it is more precise to view it as a flexible interpretation of the term "final decision." See Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 867 (1994) ("The collateral order doctrine is best understood not as an exception to the 'final decision' rule laid down by Congress in § 1291, but as a practical construction of it.") (quotation omitted).

This decision appears to fall in that small class which finally determine claims of right separate from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated. The Court has long given this provision of the statute this practical rather than a technical construction.

Cohen, 337 U.S. at 546; see also Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 713 (1996); Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978). The Tenth Circuit has formulated a three-part test reflecting these considerations, stating that the order is appealable under the collateral order doctrine when it: "(1) conclusively determines the disputed question; (2) resolves an important issue completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from a final judgment." Yousef v. Reno, 254 F.3d 1214, 1217-18 (10th Cir. 2001).

Denials of claims of immunity from suit are typically found to be immediately reviewable under the collateral order doctrine. For example, in Nixon v. Fitzgerald, the Supreme Court held that "orders denying claims of absolute immunity are appealable under the Cohen criteria." 457 U.S. 731, 742 (1982). In Mitchell v. Forsyth, the Court extended the collateral order doctrine to orders denying claims of qualified immunity. 472 U.S. 511 (1985). The Mitchell Court first summarized the reasoning behind immediate appeal of absolute immunity cases: "When a district court has denied a defendant's claim of right not

to stand trial . . . we have consistently held the court's decision appealable, for such a right cannot be effectively vindicated after the trial has occurred," and thus an order denying a claim of absolute immunity is a collateral order. Id. at 525. "[T]he essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." Id. The Court then concluded that because qualified immunity is also "an immunity from suit rather than a mere defense to liability," it would be similarly "lost if a case is erroneously permitted to go to trial." Id. at 526 (emphasis omitted). Additionally, the Court held that an immunity claim is separate from the underlying merits of the case and that the district court had conclusively determined the immunity issue. Id. at 527. Therefore, the Court held, all of the Cohen requirements had been met. Id. at 530.

The Tenth Circuit has similarly extended the collateral order doctrine to denials of absolute or qualified immunity. For example, in Chavez v. Singer, we held that a claim of absolute immunity, like a claim of double jeopardy,

> should be determined before a trial on the merits. In each situation a defendant contests a plaintiff's right to "hale him into court." The district court here conclusively determined the immunity question. Immunity is important and collateral to the merits of the action. The right to immunity is a question of law and is arguably lost once the trial is held.

698 F.2d 420, 421 (10th Cir. 1983); see also Malik v. Arapahoe County Dep't of Social Servs., 191 F.3d 1306, 1313 (10th Cir. 1999) ("Our jurisdiction to consider

- 11 -

[the officer's] appeal of the court's denial of her absolute immunity defense is not in doubt" under <u>Cohen</u>); <u>Kamplain v. Curry County Bd. of Comm'rs</u>, 159 F.3d 1248, 1250 (10th Cir. 1998) (same); <u>Stewart v. Donges</u>, 915 F.2d 572, 575 (10th Cir. 1990) (holding that denial of qualified immunity was immediately appealable under collateral order doctrine).

Many circuits have likewise held that denials of FTCA immunity are immediately appealable "collateral orders." For example, in <u>Toboas v. Mlynczak</u>, the Seventh Circuit held that "the denial of the United States' motion for substitution in this context is effectively a denial of immunity for the defendant employee, and the collateral order doctrine therefore applies with as much force in this context as it does to other claims of qualified or absolute immunity." 149 F.3d 576, 579 (7th Cir. 1998) (citation omitted). Therefore, the court held, "[a] denial of the United States' motion for substitution under the Westfall Act[6] [creating FTCA immunity] is immediately appealable under the collateral order doctrine." <u>Id.</u>

---

[6]Some courts refer to this immunity as "FTCA immunity," and some refer to it as "FELRTCA or Westfall Act" immunity. The Federal Employees Liability Reform and Tort Compensation Act (FELRTCA), or "Westfall Act," amended the FTCA to provide that an FTCA action against the United States is the sole remedy for any injury to person or property caused by the negligent or wrongful acts of a federal employee acting within the scope of his or her employment. 28 U.S.C. § 2679(b)(1). "The purpose of this 'exclusive remedy' provision was to give federal employees an absolute immunity from common law tort actions[.]" <u>Jamison v. Wiley</u>, 14 F.3d 222, 227 (4th Cir. 1994).

Similarly, in Aliota v. Graham, the Third Circuit held that because "[a]n order granting resubstitution effectively denies a federal employee's claim to absolute immunity," it is "effectively unreviewable on appeal from a final judgment." 984 F.2d 1350, 1354 (3d Cir. 1993). The district court's order also "represented its final word on the resubstitution" and "the question of resubstitution is completely separate from the merits of the . . . action." Id. at 1353. Therefore, the court held that the order denying FTCA immunity was immediately appealable under the collateral order doctrine. Id. at 1354. The approach of these two cases is not controversial; in fact, every circuit court follows the same route of analysis in dealing with collateral order appeals of FTCA immunity denials.[7]

In this case, the government argues that this weight of authority regarding the immediate appealability of FTCA immunity denials does not save our

---

[7]See e.g., Mathis v. Henderson, 243 F.3d 446, 448 (8th Cir. 2001) ("[A] district court's refusal to accept an FTCA certification is the equivalent of a denial of qualified immunity and therefore is immediately appealable."); Cuoco v. Moritsugu, 222 F.3d 99, 105-06 (2d Cir. 2000) (denial of FTCA immunity is immediately appealable under collateral order doctrine); Lyons v. Brown, 158 F.3d 605, 607 (1st Cir. 1998) (denial of FTCA immunity is appealable under collateral order doctrine); Rodriguez v. Sarabyn, 129 F.3d 760, 764 (5th Cir. 1997) (same); Coleman v. United States, 91 F.3d 820, 823 (6th Cir. 1996) (same); Flohr v. Mackovjak, 84 F.3d 386, 390 (11th Cir. 1996) (same); Melo v. Hafer, 13 F.3d 736, 741 (3d Cir. 1994) (same); Kimbro v. Velten, 30 F.3d 1501, 1503 (D.C. Cir. 1994) (same); Pelletier v. Fed. Home Loan Bank of San Francisco, 968 F.2d 865, 870 (9th Cir. 1992) (same).

jurisdiction because Appellants in this case do not present "colorable" claims of immunity. The Supreme Court has explicitly added a "colorability" requirement in the context of double jeopardy claims under the collateral order doctrine. See e.g., Richardson v. United States, 468 U.S. 317, 322 (1984) ("[W]e have indicated that the appealability of a double jeopardy claim depends upon its being at least 'colorable.'"); see also United States v. McAleer, 138 F.3d 852, 857 (10th Cir. 1998) ("Although the denial of a pretrial motion to dismiss an indictment on double jeopardy grounds falls within the collateral order exception, only 'colorable' double jeopardy claims may be appealed before final judgment. To be colorable, a claim must have some possible validity.") (citation, footnote omitted). Although the Court has not been as explicit in requiring colorability in the context of other collateral orders, it has at least stated that "requiring an official with a *colorable* immunity claim to defend a suit for damages would be peculiarly disruptive of effective government," in concluding that this freedom from suit would be effectively lost if review were delayed until final judgment. Digital Equip., 511 U.S. at 871 (quotation omitted; some emphasis omitted).

Other courts have similarly mentioned that only the denials of "colorable" immunity claims are immediately appealable under the collateral order doctrine. For example, in Powell v. Ridge, the Third Circuit explained that a "*colorable* claim of legislative immunity" could be appealed as a collateral order. 247 F.3d

- 14 -

520, 524 (3d Cir. 2001) (emphasis added).  However, in that case, the court noted that the claim of immunity was not colorable; rather, the legislators had "buil[t] from scratch" a "privilege that does not exist," and thus interlocutory was denied. Id. at 525; see also Malina v. Gonzales, 994 F.2d 1121, 1124 (5th Cir. 1993) ("The denial of a motion to dismiss raising a *colorable* claim of [judicial] immunity is appealable under the collateral order exception to the finality requirement of 28 U.S.C. § 1291.") (emphasis added); Durning v. Citibank, N.A., 950 F.2d 1419, 1422 (9th Cir. 1991) ("[W]e have held that a denial of a motion to dismiss on grounds of sovereign immunity, if *colorable*, is immediately appealable under the collateral order doctrine[.]") (emphasis added). We have also declined to find jurisdiction under the collateral order doctrine where, inter alia, "there is no merit whatsoever to the motion" denied below.  United States v. Valenzuela, 584 F.2d 374, 378 (10th Cir. 1978).

Indeed, a requirement of colorability may be found in the Cohen requirement that the asserted right on interlocutory appeal be "too important to be denied review."  Cohen, 337 U.S. at 546.  An interlocutory appeal that does not even assert a colorable right would not, almost by definition, be asserting a right sufficient important to justify Cohen interlocutory review.  See Powell v. Ridge, 247 F.3d at 525.

- 15 -

In the instant case, although we ultimately conclude on the merits that Appellants are not entitled to FTCA immunity, they at least presented a colorable claim for immunity. They were providing services requested by the government, and they pointed to statutory language that arguably supported their immunity claim. Additionally, this is not a situation where Appellants created an immunity out of whole cloth – if they were indeed federal employees, they would have been entitled to an existing immunity. Finally, there exists no precedent directly on point regarding the question of whether the Indian Health Care statute at issue expanded FTCA coverage. Therefore, Appellants' claim to immunity is at least colorable, meaning that the claim has "some possible validity," even though it is ultimately unsuccessful. McAleer, 138 F.3d at 857.

If we wait until final judgment to hear this appeal, the right not to be burdened by trial will have been irreparably lost. Additionally, the district court conclusively determined this issue,[8] and the issue itself is completely separate

---

[8]The government alternatively argues that the district court's order was not "final" or "conclusive" on the FTCA immunity issue because even if Appellants were "federal employees," the district court would still need to certify that they were acting within the scope of their employment. However, the government's argument misses the mark, as we give a practical, rather than a technical, construction to "finality." See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 170-71 (1974). The district court conclusively settled Appellant's immunity claim and was not going to revisit the issue. The decision "did not constitute merely a step toward final disposition of the merits of the case." Id. at 171 (quotation omitted).

(continued...)

from the merits of the underlying medical negligence action. Therefore, we properly exercise jurisdiction over these appeals pursuant to the <u>Cohen</u> collateral order doctrine. <u>See</u> <u>Cunningham</u>, 527 U.S. at 204; <u>Yousef</u>, 254 F.3d at 1217-18.

## B.      Immunity under the Federal Tort Claims Act

The government argues that Appellants are not "federal employees," and that 25 U.S.C. § 1660b(a) does not extend FTCA immunity to them. We agree, and thus AFFIRM the district court's denial of the motion to dismiss and the motion to substitute the United States.

In the Federal Tort Claims Act (FTCA), Congress consented to suits against the United States for certain torts committed by federal employees while acting within the scope of their employment. The government's consent to be sued under the FTCA extends only to

> claims against the United States for money damages, . . . for injury or loss of property, or personal injury of death caused by the negligent or wrongful act or omission of *any employee of the government* while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be

---

[8](...continued)
Once the district court decided that Appellants were not federal employees, it had conclusively determined the issue of FTCA immunity. If we had decided to reverse that decision, we would have remanded in order for the court to decide the "scope of employment" issue. However, the matter submitted for review here was indeed conclusively determined, and the district court made no temporary or incomplete decisions on these issues.

- 17 -

> liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1) (emphasis added). An FTCA action against the United States is the sole remedy for any injury to person or property caused by the negligent or wrongful acts of a federal employee acting within the scope of his or her employment. 28 U.S.C. § 2679(b)(1). "The purpose of this 'exclusive remedy' provision was to give federal employees an absolute immunity from common law tort actions[.]" Jamison, 14 F.3d at 227 (4th Cir. 1994).

### 1. Were Dr. Covington and Dr. Ahmad "federal employees" under the Federal Tort Claims Act?

"The [FTCA ] is a limited waiver of sovereign immunity" that only applies to federal employees. United States v. Orleans, 425 U.S. 807, 813 (1976). The Act defines "government employees" to include "officers and employees of any federal agency, but excludes any contractor with the United States." Id. (quotation omitted); 28 U.S.C. § 2671. The Supreme Court has emphasized the importance of the "federal employee" requirement as gatekeeper: "It is inconceivable that Congress intended to have waiver of sovereign immunity follow congressional largesse and cover countless unidentifiable classes of 'beneficiaries.'" Orleans, 425 U.S. at 816.

In Orleans, the Supreme Court described the test for ascertaining whether a claimant is a federal employee covered by the Act, or an independent contractor not so immunized. "A critical element in distinguishing an agency from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'" Id. at 814 (quoting Logue v. United States, 412 U.S. 521, 528 (1973)). The "question here is not whether the community action agency receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government." Id. at 815. We have devised seven factors to guide this determination:

> (1) the intent of the parties; (2) whether the United States controls only the end result or may also control the manner and method of reaching the result; (3) whether the person uses his own equipment or that of the United States; (4) who provides liability insurance; (5) who pays social security tax; (6) whether federal regulations prohibit federal employees from performing such contracts; and (7) whether the individual has authority to subcontract to others.

Lilly v. Fieldstone, 876 F.2d 857, 859 (10th Cir. 1989); see also Curry v. United States, 97 F.3d 412, 414 (10th Cir. 1996).

We have had several opportunities to apply these seven guiding factors in medical malpractice actions, where the employee is a physician or a nurse. For example, in Bird v. United States, we held that a nurse at an Indian hospital was a "federal employee" because "he was not only subject to the rules and regulations

- 19 -

and, indeed, a statute placing him under the control and supervision of physician employees of the hospital, but he was under their actual control to the extent they chose to exercise it." 949 F.2d 1079, 1086 (10th Cir. 1991). Additionally, we relied on the following considerations:

> He was required to work with patients designated by others. He maintained no separate office. He used hospital equipment exclusively. He could see patients in no other place nor under any other circumstance than as directed by government employees. He was under the control and supervision of the government surgeon at the hospital to the same extent that . . . a regular employee of the government [] was.

Id.

When it comes to physicians, we have explained that the "day-to-day control" test may be more difficult to apply. In Lurch v. United States, we provided dicta suggesting that a "modified" control test may be more appropriate because "a physician must exercise his own professional judgment, no one controls the detailed physical performance of his duties." 719 F.2d 333, 337 (10th Cir. 1983); see also Thomas K. Kruppstadt, *Determining Whether a Physician is a United States Employee or an Independent Contractor in a Medical Malpractice Action Under the Federal Tort Claims Act*, 47 BAYLOR L. REV. 223 (1995). However, we later declined to adopt a "modified control test" for physicians, because we "[did] not find that label helpful." Lilly, 876 F.2d at 859. Instead, we simply take into account the doctor's medical and ethical obligations of independent judgment when we apply the traditional control test:

It is uncontroverted that a physician must have discretion to care for a patient and may not surrender control over certain medical details. Therefore, the "control" test is subject to a doctor's medical and ethical obligations. Whether we label the test "control" or "modified control" is not determinative. What we must do in the case of professionals is determine whether other evidence manifests an intent to make the professional an employee subject to other forms of control which are permissible. A myriad of doctors become employees by agreement without surrendering their professional responsibilities.

Id.

We ultimately held that the doctor in Lilly was an independent contractor with the Army hospital, rather than a federal employee, because he maintained a private off-base office, he billed the Army separately, he was not provided office space or secretarial help, and he was never regularly scheduled on the hospital duty roster. Id. at 860; see also Ezekiel v. Michel, 66 F.3d 894, 900 (7th Cir. 1995) (finding that a resident physician was a governmental employee under the "day-to-day control" test, even though he was "'without compensation' status at the hospital and not compensated directly by the VA for his services"); Wooten v. Hudson, D.O., 71 F. Supp. 2d 1149, 1153-54 (E.D. Okla. 1999) (finding that the physician was an independent contractor, because "[t]he record in this case is sparse at best on the level of day-to-day control exercised by the Hospital over [doctor's] activities").

Where there is a contract between the government and the physician, clear language regarding government control or "federal employee" status can often

prevail over facts that might otherwise support a finding of "day-to-day control."

For example, in Duplan v. Harper, we held that a doctor who provided treatment

at an Air Force hospital was an "independent contractor," rather than a "federal

employee," because his contract with the government explicitly designated the

doctor as an independent contractor, he wore a name tag identifying himself to the

patients as a "contract physician," he was paid by a private provider, and the

private provider had control and responsibility for liability insurance. 188 F.3d

1195, 1200-02 (10th Cir. 1999). These facts outweighed other facts indicating

that patient records were maintained by the government, the government retained

the power to conduct periodic quality reviews of the doctor's performance, the

government imposed minimum standards for doctors, the government required

doctors to follow certain rules (including a dress code), the government supplied

virtually all equipment and support personnel at the clinic, and the government

required the doctor to be at the clinic during designated hours. Id. Similarly, in

Lurch, 719 F.2d at 338, we held that the contractual language prohibited treating

the doctor as a governmental employee.

In the instant case, Appellants do not even argue that the government

exercised day-to-day control over the COAIHC or Drs. Covington and Ahmad.

The record on appeal contains no contracts or other evidence relevant to this

inquiry.[9]  Accordingly, we hold that these defendants have failed to demonstrate that they are entitled to FTCA immunity as "federal employees."

### 2.    Did Congress Extend Federal Tort Claims Act Immunity to These Defendants in 25 U.S.C. § 1660b(a)?

Appellants in this case argue that the statute creating the COAIHC, 25 U.S.C. § 1660b(a), when considered in light of legislative history and intent, expanded the FTCA to them.  The district court disagreed because any such waiver of sovereign immunity was not made express in the statute.  We review this legal interpretation de novo, see United States v. Cline, 349 F.3d 1276, 1284 (10th Cir. 2003), and AFFIRM.

Because the FTCA only waives the government's sovereign immunity for "federal employees," and explicitly exempts "independent contractors," an independent contractor will be permitted to substitute the government as defendant only if Congress has expressly expanded the reach of the FTCA in their case.  This is because "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied."  Lane v. Pena, 518 U.S. 187, 192 (1996) (citation omitted).  For

---

[9]Although the statute creating the COAIHC mandates that the Clinic be treated as an administrative entity within the Indian Health Service for purposes of "coordination of care," see 25 U.S.C. § 1660b(a), this is too vague to support the requisite finding of day-to-day governmental control.

example, in Dedrick v. Youngblood, the court explained that although the FTCA does not constitute a waiver of sovereign immunity over suits against independent contractors, Congress may pass another statute expressly extending FTCA immunity to certain independent contractors. 200 F.3d 744, 746 (11th Cir. 2000); see also Galimi v. Jetco, Inc., 514 F.2d 949, 952 (2d Cir. 1975) ("Congress retains the power to modify the FTCA by means of other statutes.").

As the government points out, there are many statutes that expressly designate certain independent contractors with the government to be "federal employees" for purposes of FTCA immunity. See, e.g., 42 U.S.C. § 233(g)-(k) (Federally Supported Health Centers Assistance Act of 1992, expressly extending FTCA coverage to eligible community health centers by specifying that their employees are employees of the Public Health Service for certain purposes); 50 U.S.C. § 2783 (Atomic Testing Liability Act, expressly providing that the FTCA applies to negligence actions against contractors carrying out atomic weapons testing program under a contract with the United States and that the employees of such contractors are to be considered employees of the federal government for FTCA purposes).

In this case, the COAIHC and the doctors argue that in passing the following statutory language, Congress expanded the FTCA's coverage to reach them:

> Notwithstanding any other provision of law, the Oklahoma City
> Clinic demonstration project and the Tulsa Clinic demonstration
> project *shall be treated as service units in the allocation of resources
> and coordination of care* and shall not be subject to the provisions
> of the Indian Self-Determination Act for the term of such projects.

25 U.S.C. § 1660b(a)(2003) (emphasis added). They then explain that "service unit" here means either "(1) an administrative entity within the Indian Health Service [IHS] or (2) a tribe or tribal organization operating health care programs with funds from the IHS under the Indian Self-Determination Act." 25 U.S.C. § 1603(j). Because the COAIHC is not a tribe or tribal organization, Appellants argue that the term "service unit" here can only mean an "administrative entity" within the IHS. See id. They then point to various pieces of legislative history and the structure/function of the Clinic, and conclude that Congress intended to expand the FTCA to the COAIHC and its employees in this statute.

It is true that § 1660b(a) deems the COAIHC to be an "administrative entity" of the IHS for the purposes of allocating resources and coordinating care. However, this is not an "express" application of the FTCA. The statutory language regarding the "allocation of resources" does not expressly waive the government's sovereign immunity for purposes of FTCA suits against the COAIHC, and Appellants' argument that FTCA immunity is a "resource" to be allocated is too tenuous. The Supreme Court has cautioned: "A statute's legislative history cannot supply a waiver that does not appear clearly in any

- 25 -

statutory text; the 'unequivocal expression' of elimination of sovereign immunity that we insist upon is an expression in the statutory text." Lane, 518 U.S. at 192 (quotations omitted).  In fact, the express language of § 1660b(a) weighs against Appellants' argument because it prohibits the application of the Indian Self-Determination Act (ISDA), an Act which does expressly expand the FTCA to certain independent contractors for Indian services. See 25 U.S.C. § 450f(d).

In summary, because Appellants are neither federal employees under the government's day-to-day control, nor independent contractors to whom Congress has expressly expanded FTCA's reach, they are not entitled to FTCA immunity.


## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order denying Dr. Ahmad's and the COAIHC's motion to substitute the United States (Appeal No. 02-7040), and we AFFIRM the district court's order denying Dr. Covington's motion to dismiss on the ground of FTCA immunity.  (Appeal No. 02-7051.)