**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 20, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

WALTER CURTIS MOLES,

　　　　Plaintiff-Appellant,

v.

HARLEY G. LAPPIN, Director,
Bureau of Prisons; JOSEPH
SCIBANA, Warden, FCI El Reno; R
BENEFIEL, Captain, FCI El Reno;
MR. TOWERS, SIS Technician; R
ROONEY, SIS, Lt, FCI El Reno;
DEBRA ROBERTS, CMC, FCI El
Reno; DELBERT SAUERS, Branch
Chief, BOP; H. A. LEDEZMA,
Warden; MATTHEW MENDEZ, Case
Manager,

　　　　Defendants-Appellees.

No. 11-6123
(D.C. No. 5:08-CV-00594-F)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior
Circuit Judge.

---

[*]　　　After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Walter Curtis Moles is a federal inmate who initiated this *Bivens* suit to vindicate alleged Eighth Amendment violations committed by officials of the Bureau of Prisons (BOP).[1] Moles also invoked the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671-2680, seeking damages and injunctive relief. The district court denied an injunction, dismissed the FTCA claim for lack of jurisdiction, and granted defendants summary judgment based on qualified immunity. Thereafter, the district court clerk assessed costs against Moles, and he appealed pro se.[2] Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**BACKGROUND**

This case stems from two prison fights that occurred on August 18 and 19, 2007. At that time, Moles was confined in the general population at the Federal Correctional Institute in El Reno, Oklahoma (FCI-El Reno), where he had been since May 9, 2007. On the 18th, Moles fought two inmates who were known prison gang-members, and a third inmate who was unaffiliated with any gang. Moles sustained injuries in the fight but did not report the incident. The next day, however, on the 19th, Moles fought the third inmate again, this time wielding a twelve-inch, self-made knife. The other inmate used a padlock tied to the end of

---

[1]  *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[2]  Moles' pro se status entitles him to a liberal construction of his filings, but we do not act as his advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

-2-

a belt to whip Moles' head and body. After the fight, Moles claimed he was defending himself, but he was charged with possessing a weapon and fighting. He was sanctioned with disciplinary segregation, loss of good-time credits, and transfer to a higher-security facility.

These events compelled Moles to file this *Bivens* suit, alleging Eighth Amendment claims for failure to protect, retaliation, and deliberate indifference. Moles first claimed that defendants failed to protect him in accordance with his status as a Central Inmate Monitoring (CIM) case.[3] Moles alleged that when he arrived at FCI-El Reno, defendants failed to properly assess his CIM status, which resulted in his mistaken and harmful placement in general population. Moles next claimed that defendants retaliated against him for filing grievances accusing them of conspiring to cover-up their error of wrongfully placing him in general population. He averred that defendants retaliated by pursuing false charges and delaying the investigation into the fights because he challenged his transfer into FCI-El Reno's general population. Finally, Moles claimed that defendants exhibited deliberate indifference by re-designating him to a higher security

---

[3]     Central Inmate Monitoring cases are those inmates designated by the BOP as presenting "special needs for management." These inmates "require a higher level of review which may include Central Office and/or Regional Office clearance for transfers, temporary releases, or community activities." The purpose of the Central Inmate Monitoring System "is to provide protection to all concerned and to contribute to the safe and orderly operation of federal institutions." 28 C.F.R. § 524.70.

facility. He said a transfer into a United States penitentiary "would be a 'death sentence,'" Doc. 95 at 22 (Amend. Compl.), and therefore he should be confined in a federal correctional institute or state contract facility.[4] To that end, Moles moved for an injunction prohibiting his transfer to any United States penitentiary.

The case proceeded to discovery, and defendants moved for summary judgment based on qualified immunity. Adopting a magistrate judge's report and recommendation, the district court granted defendants' motion, dismissed the FTCA claim for lack of jurisdiction, and denied an injunction. Defendants then submitted a bill of costs, and over Moles' objection, the clerk of the district court assessed $839.15 in costs against Moles. Moles did not request the district court to review that order, but instead, he pursued this appeal.

## DISCUSSION

**Appellate Jurisdiction**

At the outset, we confront two jurisdictional issues, one concerning the timeliness of the notice of appeal and a second relating to the imposition of costs. On February 16, 2011, the district court entered its final judgment granting defendants qualified immunity. On April 7, 2011, before the sixty-day appeal window elapsed, *see* Fed. R. App. P. 4(a)(1)(B), Moles requested a thirty-day

---

[4] We have discretion to access documents from the district court that were not included in the record on appeal. *See Burnett v. Sw. Bell Tel., L.P.*, 555 F.3d 906, 909 (10th Cir. 2009).

extension to file his notice of appeal. He asserted that he had good cause for an extension because his motion to proceed on appeal in forma pauperis (IFP) was still pending. The district court granted him an extension, which afforded Moles until May 17, 2011, to file his notice of appeal. Meanwhile, the district court clerk assessed costs against Moles on April 14, 2011. Moles did not seek review of that order in the district court, but on May 6, 2011, he filed a notice of appeal contesting both the grant of summary judgment and the imposition of costs. Given this chronology, we directed the parties to brief our jurisdiction over the merits of this appeal, as well as the cost order. Having now considered the parties' responses, we conclude that we have jurisdiction over the merits appeal but not the clerk's imposition of costs.

1. Notice of Appeal

"A court of appeals acquires jurisdiction of an appeal only upon the filing of a timely notice of appeal; this requirement is mandatory and jurisdictional." *United States v. Torres*, 372 F.3d 1159, 1161 (10th Cir. 2004) (quotation and brackets omitted). Federal Rule of Appellate Procedure 4(a)(1)(B) affords an appellant in a civil case in which the government, its official, or a government agency is a party sixty days to lodge a timely notice of appeal. Rule 4(a)(5), however, permits the district court to extend the deadline for thirty days if there is good cause or excusable neglect.

The district court found that Moles had good cause for an extension because his IFP motion was still pending. Defendants suggest this was error because the concept of "good cause" excludes matters such as pending IFP motions, which pose no bar to filing a timely notice of appeal. *See Bishop v. Corsentino*, 371 F.3d 1203, 1207 (10th Cir. 2004) ("'Good cause comes into play in situations in which there is no fault-excusable or otherwise. In such situations, the need for an extension is usually occasioned by something that is not within the control of the movant.'" (quoting Fed. R. App. P. 4(a)(5) Advisory Comm. Notes (2002))). We need not decide whether the district court erred in extending the deadline, however, because as defendants point out, even if the court abused its discretion by granting Moles an extension without good cause (thus rendering the notice of appeal untimely), the motion for extension itself served as the functional equivalent of a timely notice of appeal.

Generally, courts "liberally construe the requirements of [Federal] Rule [of Appellate Procedure] 3." *Smith v. Barry*, 502 U.S. 244, 248 (1992). "If a document filed within the time specified by Rule 4 gives the notice required by Rule 3, it is effective as a notice of appeal." *Id.* at 248-49. The functional equivalent of a notice of appeal must be a timely filed document that provides notice of the party taking the appeal, the judgment being appealed, and the court to which the appeal is taken. *See United States v. Smith*, 182 F.3d 733, 735 (10th Cir. 1999).

Moles moved for an extension within the sixty-day appeal window. Thus, whether his motion serves as a functional equivalent of a notice of appeal depends on whether it provides adequate Rule 3 notice. On this score, the motion clearly indicates that Moles sought to appeal the district court's judgment granting defendants qualified immunity. Although the motion did not designate this court as the court to which the appeal would be taken, the motion does designate the United States District Court for the Western District of Oklahoma as the court from which the appeal was taken, and defendants clearly recognized that an appeal from that court would lie only in this court. *See United States v. Treto-Haro*, 287 F.3d 1000, 1002 n.1 (10th Cir. 2002). Therefore, Moles' motion for an extension served as the functional equivalent of a timely notice of appeal, and we have jurisdiction to consider the merits of this appeal.

2. Assessment of Costs

The assessment of costs, however, is another matter. Under Fed. R. Civ. P. 54(d)(1), a party may seek review of a clerk's cost award in the district court. We have interpreted Rule 54(d)(1) to mean that a party *must* seek review of the award in the district court to challenge it on appeal. *Bloomer v. United Parcel Serv., Inc.*, 337 F.3d 1220, 1221 (10th Cir. 2003) (per curiam). Yet nothing in the record shows that Moles asked the district court to review the cost award, and by failing to do so, he has waived appellate review of the award in this court. *See id.*

**Merits**

1.  Eighth Amendment Qualified Immunity

We turn, then, to the merits of this appeal. The district court, in adopting the magistrate judge's report and recommendation, determined that summary judgment based on qualified immunity was appropriate because the undisputed material facts did not establish a constitutional violation. "We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In the qualified immunity context, the plaintiff must make a two-prong showing, first that the facts alleged establish a constitutional violation, and second that the right at issue was clearly established. *Thomas v. Durastanti*, 607 F.3d 655, 662 (10th Cir. 2010). We have discretion to decide which of these inquiries to consider first, *id.*, and upon our de novo review, we agree with the magistrate judge's conclusion that Moles failed to show any constitutional violation.

A.  Failure to Protect

First, the magistrate judge explained that to establish a failure-to-protect claim, Moles was required to make an objective showing that he was incarcerated under conditions posing a substantial risk of serious harm, and a subjective

-8-

showing that prison officials were deliberately indifferent to his safety. *See Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001). The magistrate judge observed, however, that Moles failed to establish the subjective component of his claim because the undisputed material facts did not show that defendants were deliberately indifferent to his safety. Rather, the record confirms that when Moles was transferred to FCI-El Reno, there were no known members of the disruptive groups identified in his CIM file housed in general population. Doc. 134 (Br. in Support of Mot. for Sum. Judgment), Ex. 1 at 2-3. Moreover, during intake, Moles expressly indicated on his screening form that he knew of no reason why he should *not* be placed in general population. *See* Doc. 68 (Special Report) at 2-3; *id.*, Ex. 2. Although Moles acknowledged on this form that he was a CIM case, he denied ever helping law enforcement agents or testifying against anyone. *Id.*, Ex. 2. Consequently, defendants placed him in general population in accordance with the requirements of his CIM status.

Moles suggests that his CIM status created an inference that he faced a greater level of danger if placed in general population, but the magistrate judge correctly recognized that a mere inference alone is inadequate to establish liability. Rather, as the magistrate judge explained, "the defendant 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" R., Vol. 1 at 41 (quoting *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003)). Because

there was no evidence that any defendant actually knew of a substantial risk of harm to Moles, summary judgment was proper. To the extent Moles attempted to charge some defendants with supervisory liability, the magistrate judge properly concluded that his claim failed because there was no evidence that any supervisor or subordinate violated his rights. *See id.* at 45 (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) ("[W]hen a plaintiff sues an official under *Bivens* . . . for conduct arising from his or her superintendent responsibilities, the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." (quotation omitted))).

B. Retaliation

Moles' retaliation claim likewise failed. His claim was predicated on the following facts: He had filed grievances related to the August 18th fight and questioning why he was transferred to FCI-El Reno when he had "separations at [that] facility." Doc. 68 (Special Report), Ex. 12. Contemporaneously, Moles was found guilty of the disciplinary charges stemming from the August 19th fight and sanctioned with administrative segregation, loss of good time credits, and re-designation to a higher-security facility. Nearly a month later, on October 31, 2007, Moles asked to be transferred to a state facility or "witsec." *Id.* His request was denied pending completion of the investigation into the August 18th fight, at which time "a determination [would] be made concerning [his] protection

-10-

and transfer needs." Doc. 150, Ex. 22 (Response to grievance by defendant Ledezma). That investigation was completed on November 5, 2007, Doc. 219, Ex. 31, and as a result, Moles was charged again with fighting and recommended for disciplinary action, Doc. 150, Ex. 14. However, because he had already lost his good time credits and faced a security transfer due to the August 19th fight, the second fighting charge was not referred to the disciplinary authority, as "[n]o other meaningful sanctions were available." Doc. 227, Ex. 1 (Benefiel Decl.) at 8. Eventually, Moles was transferred to a United States penitentiary.

Given these circumstances, Moles claimed that the second fighting charge for the August 18th altercation was false and purely retaliatory for questioning his placement at FCI-El Reno. He also alleged that defendants purposefully delayed the investigation into the August 18th fight (which allowed the other inmates' injuries to heal) because his grievance had exposed defendants' efforts to coverup their mistake in placing him in general population.

The magistrate judge recognized, however, that these facts did not establish a retaliatory motive because the charge for the August 18th fight was never referred to a disciplinary hearings officer and sanctions were never imposed. Moreover, defendants did not return Moles to general population, *id.*, Ex. 3 (Rooney Decl.) at 7, and he was formally separated from the three other inmates involved in the August 18th fight, Doc. 219, Ex. 31 at 5. Moles claims the

-11-

delayed investigation allowed the inmates' injuries to heal, but all injuries were recorded shortly after the fights, *id.* at 2; Doc. 150, Ex. 7.

Additionally, the magistrate judge correctly concluded that Moles failed to establish causation. *See* R., Vol. 1 at 52 (citing *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) ("[A] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." (quotation omitted))). Indeed, rather than suggest a retaliatory motive to punish Moles for filing grievances relating to the August 18th fight, defendants' efforts to investigate the incident were actually prompted by Moles' grievances demanding that something be done about it. Moles insisted that he was re-designated to a federal penitentiary in retaliation for filing his grievances, but the evidence confirms he was re-designated because he was found guilty of fighting and possessing a weapon, Doc. 68 (Special Report), Ex. 4. And, that decision was not made by defendants. *See* Doc. 227, Ex. 4 (Sauers Decl.) at 2. Under these circumstances, summary judgment was proper.

C. Deliberate Indifference

Moles' third claim alleged that defendants were deliberately indifferent to his safety by approving his re-designation to a federal penitentiary. This claim is readily defeated, however, because as the magistrate judge concluded, prisoners "have no constitutionally protected interest to serve their sentences in a particular institution, or to be transferred or not transferred from one institution to another."

R., Vol. 1 at 55 (citing *Olim v. Wakinekona*, 461 U.S. 238, 249-50 (1983); *Overturf v. Massie*, 385 F.3d 1276, 1279 (10th Cir. 2004)).  But more to the point, Moles' re-designation was purely a function of the sanctions imposed against him for participating in the August 19th fight, and defendants did not choose the penitentiary to which Moles was transferred.  To the extent Moles alleged that defendants were deliberately indifferent in transferring him to FCI-El Reno, the magistrate judge explained that there was no evidence to support that claim.  At most, Moles perhaps alleged facts to create an inference supporting a theory of supervisory liability, but as we have already explained, that was clearly insufficient to survive summary judgment.

### 2.  Injunctive Relief

Moles also sought injunctive relief to enjoin his transfer to a United States penitentiary.  He failed to show a likelihood of success on the merits, however, and thus the magistrate judge correctly determined that relief should be denied. *See Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007) (setting forth the requirements for obtaining a preliminary injunction, which include showing a substantial likelihood of success on the merits).

### 3.  FTCA

Finally, Moles invoked the FTCA but failed to name the United States as a party or exhaust his administrative remedies.  The magistrate judge accordingly denied Moles leave to amend his complaint on futility grounds.  *See Duplan v.*

*Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999) (holding that "[a]s a jurisdictional prerequisite, the FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies" and "a premature complaint cannot be cured through amendment" (quotation omitted)). We perceive no error.

## CONCLUSION

The district court's judgment is AFFIRMED for substantially the same reasons stated in the magistrate judge's report and recommendation dated December 30, 2010, which was adopted by the district court's order dated February 16, 2011. Moles' "Motion to Seal and Restrict Computer Access and any Final Decision in Case" is DENIED, but his motion to proceed on appeal in forma pauperis is GRANTED. In accord with our order dated June 28, 2011, Moles is directed to continue making partial payments until the entire filing fee is paid.[5]

Entered for the Court

Wade Brorby
Senior Circuit Judge

---

[5] Moles withdrew his application for appointment of appellate counsel; we express no opinion on the matter.